[Cite as *State v. Martin*, 2021-Ohio-4246.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-03-018 |
| | : | O P I N I O N |
| - vs - | | 12/6/2021 |
| | : | |
| NICOLE S. MARTIN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR33361

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Bryan Scott Hicks, for appellant.

**S. POWELL, J.**

{¶ 1} Appellant, Nicole S. Martin, appeals the decision of the Warren County Court of Common Pleas sentencing her to serve a total of two years in prison after she pled guilty to eight counts of second-degree felony deception to obtain dangerous drugs. For the reasons outlined below, we affirm the trial court's sentencing decision.

{¶ 2} On August 28, 2017, the Warren County Grand Jury returned an 18-count indictment against Martin. Within that indictment, Martin was charged with 16 counts of deception to obtain dangerous drugs in violation of R.C. 2925.22(A), all second-degree felonies in accordance with R.C. 2925.22(B)(2)(c). The indictment also charged Martin with one count of attempted deception to obtain dangerous drugs in violation of R.C. 2923.02(A) and 2925.22(A), a third-degree felony in accordance with R.C. 2923.02(E)(1), and one count of illegal processing of drug documents in violation of 2925.23(B)(1), a fourth-degree felony in accordance with R.C. 2925.23(F)(1).

{¶ 3} The charges arose after the Hamilton Township Police Department was notified that a fraudulent prescription had been submitted to a CVS pharmacy in Maineville, Warren County, Ohio by an individual named Robert Bauers. This prompted the Warren County Drug Task Force to begin an investigation into the fraudulent prescription. This investigation revealed that Martin, who lived in New Hampshire, had been sending Bauers fraudulent prescriptions in Ohio for him to fill and then send the drugs back to her. The record indicates that at least eight of these fraudulent prescriptions were for oxycodone pills in an amount that was five times the bulk amount. Martin subsequently admitted that she had mailed the fraudulent prescriptions to Bauers in Ohio for him to fill and then send the drugs back to her in New Hampshire after Bauers took some of the drugs for himself.

{¶ 4} On September 15, 2017, the trial court issued a warrant for Martin's arrest. The record indicates Martin was thereafter arrested approximately 18 months later, on April 1, 2019. Two days after Martin's arrest, on April 3, 2019, Martin appeared before the trial court and entered a not guilty plea to all 18 charged offenses. Martin was then released after posting bond in the amount of $50,000.

{¶ 5} On August 8, 2019, the trial court held a pretrial hearing. Martin did not appear at this hearing. Four days later, on August 12, 2019, the trial court issued an order finding

good cause to extend both the statutory and constitutional speedy trial time limits to bring Martin to trial because Martin was "currently in the custody of the New Hampshire Department of Rehabilitation and Corrections." Several months later, on February 20, 2020, the trial court issued another order finding Martin was "unavailable for trial at this time" due to Martin still being "incarcerated in prison in New Hampshire."

{¶ 6} On September 15, 2020, Martin appeared before the trial court and pled guilty to eight counts of second-degree felony deception to obtain dangerous drugs in exchange for dismissal of the remaining ten charges against her. Prior to the guilty plea, the trial court addressed Martin and notified her that it was the trial court's "sort of inclination" to sentence her to community control and then "transfer [her] supervision over to New Hampshire, to see if [she] can make it out there." The trial court also notified Martin that it was not going to "guarantee anything," but that it generally went with its "inclination, unless things change[d]."

{¶ 7} Continuing, the trial court then stated:

> The big wild card in this, is getting you [to] come here from New Hampshire. We have not had a lot of luck doing that and I'm going to set this for sentencing. It's going to be in fourteen weeks, and I'm not going to move that sentencing date, so, I don't care if you've got other stuff going [on] and can't make it. If you're not here, then I'm going to issue a warrant for you and we are going to extradite you from New Hampshire. But, that's the plan.

{¶ 8} The trial court then ordered a presentence investigative report and scheduled the matter for sentencing on December 30, 2020.[1]

{¶ 9} On December 24, 2020, the trial court issued an order continuing the sentencing hearing to a then undetermined date. In so doing, the trial court stated, in

---

1. We note that Martin requested the trial court schedule the matter for sentencing to take place somewhere between 12 to 14 weeks after she entered her guilty plea so that she could make sufficient funds to pay for a plane ticket back to Ohio from her home in New Hampshire.

pertinent part, the following:

> This matter is before the Court upon the representation of the Defendant and her counsel that she is unable to appear for the sentencing because she has been exposed to COVID-19. A copy of the doctor's note is attached.
>
> Even though the Court finds the Defendant's latest excuse to be questionable given her history, it is unwise in the midst of a public health crisis to exercise anything other than extreme caution. The sentencing for December 30, 2020 is hereby continued.

{¶ 10} On February 1, 2021, the trial court held a sentencing hearing. During this hearing, the trial court noted that this case had been a "hot mess" from the start. The trial court also noted that giving Martin the "benefit of the doubt throughout this case, has never done [the trial court] any good throughout this entire case." The trial court further noted that since initially notifying Martin that it was the trial court's inclination that it would sentence her to community control sanctions and then transfer the case to New Hampshire that it had been "almost impossible to get [Martin] to court." The trial court then stated:

> Every time we have a court date it's some kind of nonsense about something else that happened in your life, some kind of drama that's going on, you've been exposed to COVID, somebody, something is going on in your life that's more important than you coming here and answering for what happened in this case. And, then, I finally get you here, which quite frankly I didn't expect you today – I finally get you here and then it's all of this nonsense about how life is not fair to you and all this terrible stuff.

{¶ 11} Continuing, the trial court stated:

> [T]he reality is, is that [the state] is right in this case. That you are not amenable to any sort of supervision. You have demonstrated that over and over and over throughout this case. And, if I put you on probation and send you back to [New Hampshire], there is no doubt in my mind that you would violate and the taxpayers of Warren County would have to pay a bunch of money to have you transported back here just so I can give you the prison time that you probably deserve in this case.

{¶ 12} Following a short recess, the sentencing hearing resumed and the trial court

sentenced Martin to serve a total of two years in prison consisting of eight concurrent two-year prison terms for each of the eight charges. In reaching its decision, the trial court specifically stated that it had found it "very clear" that Martin "just do[es] not get it." The trial court also stated that sentencing Martin to community control sanctions "doesn't make any sense" under the facts and circumstances of this case. As the trial court explained, this is because:

> I gave you every opportunity to demonstrate to me in this case, that I should not impose the prison time, that [the state] wants me to impose upon you. I gave you every opportunity to do that on pre-trial. Get here, if you can get here, I will place you on community control. We finally, after many, many, many, many, many, many months, get you here. You enter a plea and then we get the song and dance about how you can't come, that you've been exposed to COVID, or maybe you have COVID, which quite frankly, I think is all a bunch of crap. And, I think that you were avoiding me at the end of last year.

{¶ 13} The trial court also stated:

> This is how it works, Ms. Martin. I'm not happy about it, I don't think that it is a reasonable sentence either, but I don't have any choice, because you have repeatedly demonstrated to me that you are not amenable to being supervised.

{¶ 14} After the sentencing hearing concluded, the trial court issued its judgment entry of sentence. As part of that entry, the trial court stated:

> The Court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under R.C. §2929.11. The Court has balanced the seriousness and recidivism factors under R.C. §2929.12 and considered the factors under R.C. §2929.13.

{¶ 15} The trial court also stated:

> The Court finds the Defendant is not amenable to an available community control sanction and that prison is consistent with the purposes and principles of R.C. §2929.11.

{¶ 16} Martin now appeals the trial court's sentencing decision, raising the following

single assignment of error for review.

{¶ 17} MS. MARTIN WAS IMPROPERLY SENTENCED.

{¶ 18} Martin argues the trial court erred by sentencing her to serve a total of two years in prison as a result of her guilty plea to eight counts of second-degree felony deception to obtain dangerous drugs. We disagree.

{¶ 19} This court "does not review the sentencing court's decision for an abuse of discretion." *State v. Scott*, 12th Dist. Clermont Nos. CA2019-07-051 and CA2019 07-052, 2020-Ohio-3230, ¶ 54, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 10. "It is instead the standard of review set forth in R.C. 2953.08(G)(2) that governs all felony sentences." *State v. Watkins*, 12th Dist. Preble No. CA2020-03-005, 2021-Ohio-163, ¶ 48. Pursuant to that statute, this court may increase, reduce, "or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing," if this court clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 20} "A sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.'" *State v. Tillett*, 12th Dist. Butler No. CA2019-11-192, 2020-Ohio-3836, ¶ 10, quoting *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

{¶ 21} Martin initially argues the trial court erred by sentencing her to prison "when

a lesser restrictive option was available," i.e., community control sanctions, and "where the presumption of prison had been demonstrably overcome" through the evidence in the record. That is to say, although couched in slightly different terms, Martin argues the trial court erred by sentencing her to prison instead of simply placing her on community control as the record does not support the trial court's findings under R.C. 2929.13(D). We find no merit to Martin's claims.

{¶ 22} Pursuant to R.C. 2929.13(D)(1), "it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code" when sentencing a defendant for second-degree felony deception to obtain dangerous drugs. *See* R.C. 2925.22(B)(2)(c) ("there is a presumption for a prison term for the offense" of second-degree felony deception to obtain dangerous drugs). However, in accordance with R.C. 2929.13(D)(2), the trial court may depart from this presumption and impose community control sanctions in lieu of prison if the trial court finds both "that the community control sanction would adequately punish the offender and protect the public from future crime, and that the imposition of a community control sanction would not demean the seriousness of the offense." *State v. Rogers*, 12th Dist. Butler No. CA2017-08-112, 2018-Ohio-1356, ¶ 47. This requires the trial court to "exercise its discretion in determining whether the sentence satisfies the overriding purpose of Ohio's sentencing structure." *State v. Evans*, 12th Dist. Warren No. CA2017-04-049, 2018-Ohio-916, ¶ 82. That is, (1) "to protect the public from future crime by the offender and others," (2) "to punish the offender," and (3) "to promote the effective rehabilitation of the offender" by using the minimum sanctions necessary to accomplish those purposes "without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A).

{¶ 23} Despite Martin's claims, the record fully supports the trial court's findings under R.C. 2929.13(D). This includes the trial court's finding that sentencing Martin to

prison rather than simply placing her on community control was necessary given the "almost impossible" task of getting Martin to travel from her home state of New Hampshire to appear before the trial court in Ohio for sentencing. This also includes the trial court's finding that Martin had "repeatedly demonstrated" that she was not amenable to community control given the "song and dance" that she provided to the trial court after she had already taken "many, many, many, many, many, many months" to appear before the trial court for sentencing. This delay occurred even after the trial court explicitly told Martin that all she had to do was appear before the trial court for sentencing in order for her to be sentenced to community control sanctions instead of prison. Therefore, because we find the record fully supports the trial court's findings under R.C. 2929.13(D), Martin's first argument lacks merit.

{¶ 24} Martin also argues the trial court "failed to make statutory findings" under R.C. 2929.11 and 2929.12 prior to issuing its sentencing decision. Martin argues this failure creates an issue with the validity of her prison sentence since "[s]ome findings under ORC §2929.12 as to seriousness and recidivism are required." Therefore, according to Martin, because "[t]here is no reference to the statutory factors, and the purposes and principles of sentencing are not discussed, but merely a box checked on the entry," the trial court's sentencing decision must be reversed and this matter remanded for resentencing. We again find no merit to Martin's claims.

{¶ 25} Contrary to Martin's clams, there is "no language contained in R.C. 2929.11 which require[s] the trial court to make any specific findings as to the purposes and principles of sentencing." *State v. Kane*, 5th Dist. Ashland No. 20-COA-012, 2020-Ohio-5152, ¶ 11, citing *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 31. "Likewise, R.C. 2929.12 does not require the trial court to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable

seriousness and recidivism factors.'" *Id.*, quoting *State v Arnett*, 88 Ohio St.3d 208, 215 (2000). "All that is required is the trial court 'consider' the relevant statutory factors set forth in R.C. 2929.11 and 2929.12 prior to issuing its sentencing decision." *State v. Watkins*, 12th Dist. Preble No. CA2020-03-005, 2021-Ohio-163, ¶ 50, citing *State v. King*, 12th Dist. Butler No. CA2018-05-101, 2019-Ohio-1492 ¶ 9. "[T]he trial court is not required to use any specific language or make specific findings to demonstrate that it considered the applicable sentencing factors." *State v. McKnight*, 12th Dist. Butler No. CA2019-08-145, 2020-Ohio-3314, 9.

{¶ 26} The record in this case, which includes explicit references to both R.C. 2929.11 and 2929.12 in the trial court's judgment of sentence entry, makes clear that the trial court properly considered both of these statutes prior to issuing its sentencing decision. Therefore, because the trial court was not required to make any statutory findings under either R.C. 2929.11 or 2929.12 prior to issuing its sentencing decision, Martin's second argument also lacks merit. Accordingly, for the reasons outlined above, and finding no merit to either of the two arguments raised by Martin herein, Martin's single assignment of error arguing the trial court erred by sentencing her to serve a total of two years in prison after she pled guilty to eight counts of second-degree felony deception to obtain dangerous drugs is overruled.

{¶ 27} Judgment affirmed.

PIPER, P.J., and BYRNE, J., concur.